**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHRISTOPHER MAZZELLA,** | : | **No. 3:13cv1516** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **LEE MARZEN** | : | |
| **in his individual capacity,** | : | |
| **Defendant** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## <u>MEMORANDUM</u>

Before the court for disposition is Defendant Lee Marzen's

(hereinafter "defendant") motion for summary judgment.  The matter has

been fully briefed and argued, and is ripe for disposition.  For the reasons

explained below, the court will grant defendant's motion.

## Background

This action arises from Plaintiff Christopher Mazzella's (hereinafter

"plaintiff") arrest by defendant, an officer in the employ of the Jim Thorpe

Police Department.  Plaintiff claims that defendant had no probable cause

to arrest him, and that defendant used excessive force in the course of

taking him into custody.

On June 10, 2011, plaintiff attended a graduation ceremony at Jim

Thorpe High School to watch his brother, Justin Mazzella, graduate. (Doc.

25-2, Def.'s Statement of Material Facts (hereinafter "SOF") ¶ 1).

Defendant was assigned to provide security and crowd control during the high school graduation ceremony in the school's gymnasium.  (SOF ¶ 2). The high school's Security Director advised defendant that air horns were not to be allowed on the premises.  (Doc. 25-6, Dep. of Lee Marzen (hereinafter "Marzen Dep." at 7.)  A pre-ceremony announcement, which the defendant heard, also stated that noisemakers, including air horns, were prohibited.  (Doc. 26-3 at 16; Def.'s Response to Requests for Admissions ¶¶ 3, 5; see also Doc. 26-3 at 8-9).[1]

At the time plaintiff's brother's name was announced, plaintiff sounded an air horn for between eight and nine seconds.  (SOF ¶¶ 4, 5; Doc. 30, Video 1[2] at :38).  Before the horn blast, the graduates' names were announced at a steady pace; the announcements halted when the air-horn sounded.  (Video 1 at :47).

Defendant Marzen approached the plaintiff and informed him he had

---

[1] Plaintiff testified that he knew that air horns were not permitted at graduation.  (SOF ¶ 4; Doc. 25-5, Dep. of Christopher Mazzella (hereinafter "Mazella Dep.") at 6, 10.)  Plaintiff testified that he did not hear the announcement on the day of his brother's graduation, but knew from past experience that air horns were not permitted.  (Id. at 6).

[2] All citations to "Video" refer to digital videos submitted to the court. (Doc. 30).  The court requested these videos at oral argument, and the parties agreed at that time that they are authentic.

to leave the ceremony.  (Marzen Dep. at 10).  Plaintiff initially did not

comply, but then stood and defendant escorted him down the bleacher

steps.  (Mazzella Dep. at 5-6, Marzen Dep. at 14-15).  As the parties

exited the gymnasium, defendant pushed plaintiff against a wall.  (Video 3

at :08).  Defendant applied a "half-nelson" hold to plaintiff's arm and

guided him toward the building exit.  (Mazzella Dep. at 20).

As the group proceeded toward the building's exit, a crowd grew in

number and drew closer around the parties.  (SOF ¶ 12, Video 5 at :07-

15).  Some individuals in the crowd, including plaintiff's mother, made

physical contact with the parties and at times grabbed hold of the plaintiff.

(Video 5 at :07-15; Doc. 25-7, Dep. of Joseph Mazzella at 16).  Before

they reached the exit, the defendant took the plaintiff to the ground,

landing on top of him.  (Video 5 at :16-19).  A few seconds later,

defendant, with the assistance of an off-duty police officer, lifted plaintiff to

his feet and continued toward the exit.  (Id.; SOF ¶ 13)

Once outside, defendant placed plaintiff under arrest.  The entire

interaction between plaintiff and defendant, until they had exited the

building, lasted at most three to five minutes.  (SOF ¶ 14).

After transporting plaintiff to the police station, defendant called the

3

assistant district attorney for Carbon County and explained the events that occurred at the graduation.  The assistant district attorney agreed with defendant's assessment and approved the charge of persistent disorderly conduct.  (SOF ¶ 15).

Once the charge was approved and a criminal complaint filed, plaintiff appeared before Magisterial District Judge Kozcloiek in Lansford, Pennsylvania.  (SOF ¶ 16).  The magisterial district judge set bail, and defendant transported plaintiff to the Carbon County Correctional Facility. (SOF ¶ 17).  Defendant had no further contact with plaintiff on the date of accident. (SOF ¶ 18).  Plaintiff alleges that he sought treatment at a hospital the following day and received a diagnosis of a sprained neck, but the hospital did not admit him.  He further alleges that he sustained bruises that lasted one and one-half weeks.  (Mazzell Dep. at 34-35). After trial, a jury subsequently acquitted plaintiff of all charges, including a summary offense.  (Doc. 1, Compl.  ¶ 12).

 Based upon plaintiff's acquittal, plaintiff commenced this action on June 6, 2013, alleging four counts: Count I invokes 42 U.S.C. § 1983 and alleges that the defendant violated plaintiff's Fourth Amendment right to be free from unreasonable and unlawful seizures and free from the use of

excessive force under color of state law; Count II alleges a state law claim

for assault and battery; Count III alleges a state law claim for false arrest

and illegal imprisonment; Count IV alleged harassment and intentional

destruction of property in connection with an alleged "retaliatory raid" on

plaintiff's real estate in May 2013.  (Doc. 1, Compl.).  Defendant filed a

motion to dismiss on July 29, 2013, which we denied on November 20,

2013.  (Docs. 8, 14).  On April 23, 2014, plaintiff voluntarily dismissed

Count IV with prejudice.  (Doc. 22).

Discovery closed on August 1, 2014, and defendant timely filed the

instant motion for summary judgment on August 15, 2014.  (Doc. 25).  The

parties then briefed and argued the issues, bringing the matter to its

current procedural posture.

**Jurisdiction**

Because this case is brought pursuant to 42 U.S.C. § 1983, the

court has jurisdiction pursuant to 28 U.S.C. § 1331.  ("The district courts

shall have original jurisdiction of all civil actions arising under the

Constitution, laws, or treaties of the United States.").  The court has

supplemental jurisdiction over plaintiff's state law claims pursuant to 28

U.S.C. § 1367(a).  ("[I]n any civil action of which the district courts have

original jurisdiction, the district courts shall have supplemental jurisdiction

over all other claims that are so related to claims in the action within such

original jurisdiction that they form part of the same case or controversy

under Article III of the United States Constitution.").

**Standard of Review**

Granting summary judgment is proper if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law.

See Knabe v. Boury, 114 F.3d 407, 410 n. 4 (3d Cir.1997) (citing Fed. R.

Civ. P. 56(c)).  "[T]his standard provides that the mere existence of some

alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment; the requirement is that

there be no **genuine** issue of **material** fact."  Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must

examine the facts in the light most favorable to the party opposing the

motion.  Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949

(3d Cir. 1990).  The burden is on the moving party to demonstrate that the

evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**Discussion**

Defendant seeks summary judgment based on three arguments: 1) defendant is immune from suit on the federal claims under the doctrine of qualified immunity, 2) defendant is immune from state law claims under official immunity under Pennsylvania's Political Subdivision Torts Claim Act (hereinafter "PSTCA"), and 3) punitive damages are unavailable as a matter of law. Plaintiff asserts that the factual basis for all three claims is

7

in dispute, and therefore summary judgment is improper.  We address the issues in turn.

## I. Qualified Immunity

Defendant asserts immunity from suit on the federal Section 1983 claims under the doctrine of qualified immunity.  A government official sued under §1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.  See Ashcroft v. al-Kidd, 563 U. S. ___, ___ (2011) (slip op., at 3).  A right is clearly established only if its contours are sufficiently clear that "a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U. S. 635, 640 (1987).  In other words, "existing precedent must have placed the statutory or constitutional question beyond debate."  al-Kidd, 563 U. S., at ___ (slip op., at 9).  This doctrine "gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'"  Id., at ___ (slip op., at 12) (quoting Malley v. Briggs, 475 U. S. 335, 341 (1986)).  The question of qualified immunity should be decided at the earliest possible stage of litigation to avoid losing the immunity by

erroneously allowing the case to go to trial.  Orsatti v. N. J. State Police,
71 F.3d 480 (3d Cir. 1995).

The Supreme Court has established a two-part analysis that governs
whether an official is entitled to qualified immunity.  Saucier v. Katz, 533
U.S. 194, 201 (2001).  We ask: (1) whether the facts alleged by the
plaintiff show the violation of a constitutional right; and (2) whether the
right at issue was clearly established at the time of the alleged
misconduct.  Id.; Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir.
2010).  Courts may address the two Saucier prongs in any order, at their
discretion.  Pearson v. Callahan, 555 U.S. 223, 236 (2009).  If the plaintiff
fails to satisfy either prong, the defendant is entitled to judgment as a
matter of law. See id. at 232.

A right is clearly established if "it would be clear to a reasonable
officer that his conduct was unlawful in the situation he confronted."
Reedy v. Evanson, 615 F.3d 197, 224 (3d Cir.2010) (quoting Katz, 533
U.S. at 202).  Plaintiff argues, and the defendant does not contest, that
the rights at issue–namely the right, under the fourth amendment, to be
free from unreasonable seizure and from the use of unreasonable and
excessive force under color of law–are clearly established.  Therefore, to

9

establish a defense of qualified immunity, the defendant must demonstrate that the facts, considered in the light most favorable to the plaintiff, do not show that defendant violated those established rights.

Plaintiff raises two federal law claims of unreasonable seizure, for false arrest and excessive force.  We will discuss each separately.

## A. False Arrest

Count I of plaintiff's complaint alleges that defendant unreasonably seized plaintiff and subjected him to false arrest.  In cases of false arrest, qualified immunity shields state actors from liability if "a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed." Hunter v. Bryant, 502 U.S. 224, 226 (1991) (quoting Anderson v. Creighton, 483 U.S. 635, 641 (1987)).  Law enforcement officials who "reasonably but mistakenly conclude that probable cause is present" are, therefore, entitled to immunity. Id.

Plaintiff argues that defendant arrested him for the misdemeanor offense of persistent disorderly conduct solely for his use of the air horn. (Doc. 26-4 ¶ 9).  Plaintiff contends that the charge was a post hoc attempt to justify an improper arrest, and that, at most, the defendant had probable

10

cause to arrest him for a summary offense.

Defendant testified that he decided to charge plaintiff with persistent disorderly conduct based upon his blowing of the air horn and his conduct as defendant escorted him from the gymnasium.  (Marzen Dep. at 11).[3] Plaintiff was also charged with resisting arrest.  (Doc. 1, Compl.  ¶ 9).

Defendant argues that the seizure of plaintiff was reasonable and with probable cause.  At oral argument, defendant pointed to the fact that, as far as he knew, plaintiff had been warned along with all other attendees at the ceremony that air-horns were prohibited.  From the defendant officer's perspective, plaintiff sounded the air-horn after a reasonable warning not to do so.

Defendant argues that probable cause existed to believe that plaintiff had committed a misdemeanor offense under 18 Pa C.S.A. § 5503, which provides:

> A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>   (1) engages in fighting or threatening, or in violent or tumultuous behavior;

_____

[3] The record reflects that plaintiff was charged with two separate misdemeanor counts of persistant disorderly conduct, one based on creating an unreasonable noise, and the other based on fighting.  Court of Common Pleas of Carbon County, Docket No. CP-13-CR-0000495-2011.

(2) makes unreasonable noise;
(3) uses obscene language, or makes an obscene gesture; or
(4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

Section 5503 further specifies that disorderly conduct is a summary offense, unless "the intent of the actor is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct **after reasonable warning** or request to desist," in which case the infraction would be elevated to a third degree misdemeanor.  18 PA. CONS STAT. ANN. § 5503(c) (emphasis added).

Based on the undisputed facts, probable cause to believe that plaintiff had committed the summary offense of disorderly conduct existed when plaintiff sounded the air-horn.  A reasonable officer could consider an eight to nine second blast on an air-horn during a graduation ceremony to be "an unreasonable noise."  A reasonable officer could also consider the use of an air-horn after an announcement warning that such devices were prohibited to be "persistent" under the statute.

Whether defendant correctly applied the law to the facts is irrelevant for the qualified immunity analysis; what matters is that even if it was a mistake, it was reasonable for the defendant, in the moment, to believe

that probable cause to arrest plaintiff for a misdemeanor existed.  See Paff

v. Kaltenbach, 204 F.3d 425, 436 (3d Cir. 2000) ("While probable cause to

arrest requires more than mere suspicion, the law recognizes that

probable cause determinations have to be made 'on the spot' under

pressure and do 'not require the fine resolution of conflicting evidence

[required at a trial].'") (quoting Gerstein v. Pugh, 420 U.S. 103, 121

(1975)); Whiting v. Bonazza, 545 F. App'x. 126, 129 (3d Cir. 2013).

Defendant also states that plaintiff's resistance and disruptive

behavior as he was led from the gymnasium constituted misdemeanor

disorderly conduct in its own right, behavior plaintiff denies.  This disputed

issue of fact is not material, however, in light of our finding that probable

cause for the arrest existed as soon as plaintiff sounded the air-horn.

Therefore, qualified immunity precludes plaintiff's section 1983 false

arrest claim.

## B. Excessive Force

Count I of plaintiff's complaint also alleges a cause of action for

excessive force.   Defendant contends that qualified immunity also

precludes plaintiff's section 1983 excessive force claim.  "The use of

excessive force is itself an unlawful 'seizure' under the Fourth

Amendment." Couden v. Duffy, 446 F.3d 483, 496 (3d Cir. 2006) (citing

Graham v. Connor, 490 U.S. 386, 395, (1989)).  The use of excessive

force during a seizure should be analyzed under the Fourth Amendment

and its "reasonableness" standard.  Graham, 490 U.S. at 395.  Such an

inquiry "requires a careful balancing of 'the nature and quality of the

intrusion on the individual's Fourth Amendment interests' against the

countervailing governmental interests at stake."  Id.  Qualified immunity

requires the dismissal of claims for excessive force if the defendant's

actions were "objectively reasonable under the totality of the

circumstances."  Lockhart v. City of Easton, 2014 Westlaw 6981101, *1

(3d Cir. Dec. 11, 2014).

 "Not every push or shove, even if it may later seem unnecessary in

the peace of a judge's chambers, is constitutionally unreasonable."

Sharrar v. Felsing, 128 F.3d 810, 821 (3d Cir. 1997).  "The degree of force

that [the officer] used to arrest and transport [plaintiff] had to exceed that

which was reasonable."  Whiting v. Bonazza, 545 F. App'x. 126, 130 (3d

Cir. 2013).  In this case, it did not.

 The Supreme Court has enumerated a number of factors to use in

making an objective determination of whether the force was reasonable,

14

including severity of the crime, whether the suspect poses an immediate threat to the safety of the officer or others and whether the suspect is actively resisting arrest or attempting to evade arrest by flight.  Graham, 490 U.S. at 396.  To determine whether a use of force has crossed the constitutional line, a court must examine such elements as "'the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Janicsko v. Pellman, 774 F. Supp. 331, 341 (M.D. Pa. 1991),  quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973), aff'd, 970 F.2d 899 (3d Cir. 1992).

The Third Circuit has also articulated additional factors, including "the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time."  Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir.1997).

The court must consider the totality of the circumstances, including all of the factual elements enumerated above, in determining whether an

officer used excessive force.  While plaintiff does not specify which of

defendant's acts rise to unconstitutionally excessive force, plaintiff alleges

defendant: 1) aggressively grabbed plaintiff by his shirt and pulled him to

his feet; 2) pushed plaintiff toward a wall; 3) placed plaintiff in a half-

nelson hold; and 4) threw plaintiff to the ground.

While the court must, at the summary judgment stage, view the facts

from the point of view of the non-moving party, the court must also

consider the reasonableness of these facts "from the perspective of a

reasonable officer on the scene."  Graham, 490 U.S. at 396.  Under the

circumstances, and in light of the evidence in the record, none of these

facts rises to a constitutional violation.

No issue of material fact exists as to whether the force used by the

defendant was unreasonable in light of all the circumstances.  While the

severity of the alleged crime was not substantial, the evidence, including

videos submitted by the plaintiff at the request of the court, establishes

that: 1) the force was used in the context of an arrest; 2)  the plaintiff was

noncompliant at times; 3) the plaintiff was belligerent at times, supporting

a reasonable officer's conclusion that he might present a danger to the

officer and those around him; 4) the officer was required to deal with ten

or more people crowding around him at times, supporting his contention that the situation was unsafe; 5) the entire incident was of brief duration, particularly the instances where force was applied; 6) the officer did not use more force than was necessary under the circumstances; 7) plaintiff has presented no evidence beyond bare allegations that the officer used force for a malicious or sadistic purpose; and 8) the plaintiff alleges no serious injuries.

The court reaches these conclusions after careful, objective review of the facts in evidence, while drawing all reasonable inferences in favor of the plaintiff.  We elaborate below.

Plaintiff testified that when defendant first approached him, he remained seated, offered the air horn to defendant, and asked if defendant could just take the air horn.  Plaintiff alleges that defendant then aggressively grabbed the plaintiff by his shirt without provocation and pulled him to his feet.  (Mazzella Dep. at 5-6).  Plaintiff's brother, Joseph Mazzella, testified that the defendant grabbed plaintiff by the wrist, not the shirt.  (Doc. 25-7, Dep. of Joseph Mazzella at 10).

Defendant testified that the plaintiff passed the air horn to someone behind him, concealing it from the officer.  (Marzen Dep. at 9).  Defendant

agreed with plaintiff's testimony that plaintiff initially refused to leave the gymnasium, but stated that plaintiff then stood up and began walking down the stairs with defendant following him.  (Marzen Dep. at 14-15).

Even accepting plaintiff's version of the first moments of the parties' interactions, plaintiff admits that when defendant told him to stand because he was being ejected from the premises, he did not comply. Instead, he remained seated and allegedly offered the air-horn to the officer.  Thus, a reasonable officer, attempting to secure a non-compliant suspect whom he had probable cause to arrest, would be within the bounds of reason to grasp the suspect to induce movement.  See, e.g. Janicsko, 774 F. Supp. at 341 (finding that restraints, the pulling of hair, and "manhandling" may be viewed as a matter of law the concomitants of a contested arrest).

The same reasoning applies to the defendant pushing plaintiff against a wall and applying a half-nelson hold.  As the two men exited the gymnasium, the defendant pushed plaintiff forward toward a wall.  (Video 3 at :08).  Plaintiff stopped his forward motion with his hands on the wall, and defendant then applied a hold, variously described as "one hand on the back of plaintiff's head and his other hand holding plaintiff's arm"

18

(Marzen Dep. at 12), and a "half nelson type of hold" (Mazzella Dep. at 20).  (Video 3 at :11-14).   Plaintiff claims he did nothing to provoke this push and the subsequent hold.  (Mazzella Dep. at 19).

Defendant, in contrast, stated that as they reached the exit, plaintiff pulled away from defendant, causing defendant to lose his balance. (Marzen Dep. at 11).  Defendant then told plaintiff he was under arrest and attempted to grab plaintiff's hands.  (Id.)  Plaintiff resisted this attempt to handcuff him, so defendant applied the half nelson hold.  (Id. at 12-13). Defendant then guided plaintiff away from the gymnasium, walking with some visible difficulty as plaintiff turned both his and defendant's bodies to speak with one or more of the five individuals who had followed the two men from the gymnasium.  (Video 3 at :16-18).  Using the wall to apply a controlling hold was a reasonable measure in securing plaintiff for arrest under the circumstances.  (Id.)

Finally, we examine the application of force by which defendant threw plaintiff to the ground.  Defendant argues that bringing plaintiff to the ground was a reasonable measure necessitated by the crowd forming around the two men.  Defendant avers that the actions of the crowd and plaintiff's resistance created an unsafe situation, so defendant brought

plaintiff to the ground to regain control.  (Marzen Dep. at 13).  Both video

evidence and testimony from plaintiff's brother corroborate defendant's

description of the crowd's encroachment.  Placed in the context within

which the officer made the decisions he made, the act of taking plaintiff to

the ground was reasonable, and therefore not excessive.

As the group proceeded toward the building's exit, the crowd grew in

number and drew closer around the parties.  (SOF ¶ 12, Video 5 at :07-

15).  Eleven individuals, some making physical contact with the plaintiff or

defendant, kept pace with the two men.  (Video 5 at :07-15).  One male

and two females reached in, grabbing for either the plaintiff or defendant.

(Id.)  Plaintiff's brother testified that one of the women, plaintiff's mother,

was grasping the plaintiff while the defendant asserts he was struggling

with the plaintiff, who was resisting.  (Doc. 25-7, Dep. of Joseph Mazzella

at 16).

Approximately three seconds after the parties landed on the floor,

defendant on top of the plaintiff, the defendant began to lift plaintiff to his

feet.  (Video 5 at :16-19).  The parties agree that once the situation was

under control, defendant, assisted by an off-duty police officer named

James Rovinski, lifted plaintiff from the ground and continued to escort

20

him out of the school.  (SOF ¶ 13).  Once plaintiff was on his feet with both

the defendant and Officer Rovinski each holding one of his arms, plaintiff

bent at the waist, apparently resisting the officers' forward motion, and all

three men took a few staggering steps back and to their left.  (Video 5 at

:28).

As the men struggled, defendant ordered plaintiff's mother, who was

screaming, to "Back off."  (Video 7 at :01).  At one point, plaintiff pulled his

right arm free from Officer Rovinski's grasp and raised it toward defendant

before Rovinski could regain control.  (Video 6 at :47).

Among many shouting voices, and as the crowd continued to grow,

plaintiff yelled, "I'm not fighting back.  I'm walking."  (Id. at :07).  Then

plaintiff, who was not walking, but rather struggling against defendant's

grasp, turned to his left so his face and the defendant's were inches apart,

and shouted, "Fucking pig!"  (Id.)  Defendant pushed plaintiff's head

around to face front and the three men resumed moving toward the exit.

(Id.)  Several seconds later, plaintiff again halted their progress, turning to

his left to shout something about a videocamera, while indicating

individuals recording the incident on their cell phones.  (Video 7 at :14).

Throughout this time, the plaintiff's mother loudly refused to release her

grip on the plaintiff.  (Id. at :23).  Just before they reached the exit doors,

the defendant restrained the plaintiff with an arm around the chest, and

told him to "Relax."  (Id. at :25).  The plaintiff turned his torso to his right to

yell something at Officer Rovinski.  (Id. at 29).

As they emerged from the building, the defendant ordered the

plaintiff to produce his identification and again told him to relax.  (Id. at

44).  A growing number of people, mostly young men, continued to gather

around the parties and Officer Rovinski, shouting and complaining about

defendant's actions.  (Id. at 1:30-2:00).  When another officer arrived,

defendant, still out of breath, explained, "I had a problem with this guy with

a horn.  I tried to walk him out, he kept tensing up.  I was trying to hold him

to get him out.  He resisted.  I had to drop him to the ground.  I'm going to

take him into custody."  (Id. at 2:30).

A reasonable officer under those circumstances would be justified in

using a measured amount of physical force to maintain order and prevent

matters from spinning out of control.  There are no allegations that

defendant used any gratuitous force solely to inflict pain on plaintiff, such

as punches or kicks, nor are any such acts revealed by the videos.

Defendant used only enough force to take plaintiff to the ground, regained

control of the situation within seconds, and escorted plaintiff outside to complete the arrest.  He managed all this without inflicting or allowing serious injury to the plaintiff, himself, or any of the dozen or so individuals clustered in close proximity to the situation.

Moreover, the court's review of the video evidence–particularly of video created by plaintiff's brother–establishes that plaintiff did, both physically and verbally, resist defendant's efforts to move him outside the school building and effect the arrest.  The court recognizes Officer Marzen's restrained and professional demeanor throughout the incident, especially in the face (quite literally) of plaintiff's uncooperative and at times antagonistic behavior.  Officer Marzen arrested plaintiff quickly and without allowing events to escalate.  Any reasonable officer under similar circumstances would be justifiably satisfied with such an outcome, and thus no reasonable jury could find that defendant used excessive force.

## II. Official Immunity Under the Pennsylvania Political Subdivision Tort Claims Act ("PSTCA")

Plaintiff's complaint also asserts state law causes of action for assault and battery, false arrest, and illegal imprisonment.  Defendant argues that he is immune from plaintiff's state law claims under the

23

PSTCA.  The court addressed the issue of PSTCA official immunity in this

matter at the motion to dismiss stage.  At that time, we wrote:

> Defendant argues that the PSTCA provides him with immunity from plaintiff's state law claims.  District Courts have held that, under the PSTCA, with limited exceptions, employees enjoy the same broad immunity that their employing agencies enjoy.  DeBellis v. Kulp, 166 F. Supp. 2d 255, 279 (E.D. Pa. 2001); Knight v. Simpson, No. 3:CV-08-0495, 2008 WL 1968770 (M.D. Pa. Apr. 3, 2008).  The Act states that "[a]n employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency."  DeBellis, 166 F. Supp. 2d 255, 279 (E.D. Pa. 2001); 42 PA. CONS STAT. ANN. § 8545.  An employee of a local agency may claim the defense of official immunity by asserting that his or her conduct "was authorized or required by law, or that [the employee] in good faith reasonably believed the conduct was authorized or required by law." Id.; 42 PA. CONS STAT. ANN. § 8546(2).  If the court determines, however, that the employee's actions constituted "a crime, actual fraud, actual malice or willful misconduct," the employee may not invoke the protection of official immunity.  Id.; 42 PA. CONS STAT. ANN. § 8550.  In this context, "willful misconduct . . . is synonymous with 'intentional tort.'" Lanci v. Giles, 572 A.2d 827, 830 (Pa. Commw. Ct. 1990) (citing King v. Breach, 540 A.2d 976 (Pa. Commw. Ct. 1988)).  Additionally, "the pursuit of unfounded criminal charges against an individual has long been recognized as 'willfull misconduct' within the meaning of section 8550." Thompson v. Wagner, 631 F. Supp. 2d 664, 688 (W.D. Pa. 2008) (citing Overstreet v. Borough of Yeadon, 475 A.2d 803 (Pa. Super. Ct. 1984)).
>
> Here, plaintiff alleges that defendant committed intentional torts when the defendant arrested plaintiff without probable cause[.]  Viewing plaintiff's allegations as true, immunity may not apply.  As such, at the present time, the

court will deny defendant's motion on this ground.

Mazzella v. Marzen, 2013 WL 6115797, *5 (M.D.Pa. Nov. 20, 2013).

We have now found that probable cause did exist for plaintiff's arrest and that defendant's use of force was reasonable and therefore not excessive.  Thus defendant was justified in believing his conduct "was authorized or required by law."  DeBellis, 166 F. Supp. 2d 255, 279 (E.D. Pa. 2001); 42 PA. CONS STAT. ANN. § 8546(2).  Therefore, official immunity under the PSTCA does apply, and plaintiff's state law claims will be dismissed.

## III. Punitive Damages

Finally, defendant argues that summary judgment is appropriate on plaintiff's claims for punitive damages.[4]  Because the court will dismiss all of plaintiff's claims, this issue is moot.

## Conclusion

For the foregoing reasons, the defendant is entitled to qualified immunity and official immunity.  Therefore, the defendant's motion for summary judgment will be **GRANTED**, and all claims will be dismissed.

───────────────

[4] Defendant also argues that punitive damages against him in his official capacity are barred.  See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981).  Defendant has not been sued in his official capacity, and this argument is therefore also moot.

An appropriate order follows.


**Date:** 1/14/15                          **s/ James M. Munley**
                                        **JUDGE JAMES M. MUNLEY**
                                        **UNITED STATES DISTRICT COURT**